UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 12-60945-Civ-Zloch

JOSEPH LYNCH,

    Plaintiff,
v.

FINANCIAL RECOVERY SERVICES OF MINNESOTA, INC,
 d/b/a FINANCIAL RECOVERY SERVICES, INC.,

    Defendant.
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER (DE 48)

Plaintiff, Joseph Lynch, files this Opposition to Defendant's Motion for Protective Order (DE 48) and, in support thereof, states as follows:

1.    Having been presented with the affidavits accompanying Defendant's motion, Plaintiff withdraws his request and has cancelled the deposition of Wayne Kantola, however, the affidavits of Amber Britton-Koski, Melanie Balaban and Harold Babb are contradicted by other evidence, and thus Plaintiff seeks those depositions.

2.    Plaintiff did not pull these witnesses out of thin air. On February 1, 2013, *after* the deposition of Defendant's corporate representative, which was held on January 23, 2013, Defendant amended its interrogatories to disclose Amber Britton-Koski, Melanie Balaban and Harold Babb as persons having knowledge of the facts of the case (See attached Exhibit "A"), and subsequently agreed to the date and time for the witness's depositions, but has apparently since changed its mind and now filed a motion for protective order. Because Defendant is asserting these individuals as persons having

1

knowledge of this case, and because they were not disclosed at the time Plaintiff took Defendant's corporate representative's deposition, because these witnesses do have knowledge of the facts of this case, and because the affidavit of one of these witnesses has contradicted the corporate representative's under-oath testimony, Plaintiff should be permitted to take the depositions of these witnesses. Although Defendant recites in its motion that it attempted to confer, the conference was more like an allusion to the possibility of a motion for protective order rather than an in-depth dialogue. Defendant fails to mention in its motion its unusual and intrusive discovery practice in this case, including a subpoena to inspect the hard drive at Plaintiff's counsel's office, including all information regarding every single client Plaintiff's counsel has ever represented, a subpoena to depose Plaintiff's counsel, a subpoena and an actual deposition of the corporate representative of Plaintiff's counsel's office, as distinguished from Plaintiff, the re-setting of Plaintiff's deposition a second time, without leave of Court, and a subpoena issued to Plaintiff's son regarding what knowledge Plaintiff's adult son may have. Defendant has fully availed itself to every available discovery means, and Plaintiff's effort to take these additional three depositions, at a date, time, and location that Defendant's counsel has specifically agreed to, in light of all of the facts of this case, does not seem unreasonable, particularly considering Defendant's own conduct in discovery.

### **MELANIE BALABAN'S DEPOSITION SHOULD BE TAKEN BECAUSE THE REPRESENTATIONS IN HER AFFIDAVIT ARE CONTRARY TO THE RECORDS AND PRIOR TESTIMONY IN THIS CASE, SHOWING THAT SHE ACTUALLY DOES HAVE KNOWLEDGE**

3.　　Ms. Balaban claims in her affidavit that she has no knowledge of the facts,

yet the records show that she personally accessed the Plaintiff's file on the day the telephone call in question was made by Defendant to Plaintiff. Defendant has claimed that it does not know how or why the message in question came to be left on Plaintiff's answering machine, and denies that it occurred, but Ms. Balaban has knowledge of the circumstances. Defendant supplemented its discovery responses on February 7, 2013, and produced notes from the dialer campaign that was used to contact Plaintiff. On page 503 of the records, the "MSG080" campaign appears, with a note that it was accessed on July 11, 2011, by user "mbb." At the deposition of Brian Bowers, Plaintiff's counsel specifically requested the identity of user "mbb" and was informed that "mbb" is Melanie Balaban, and that she is the production manager/supervisor of the teams of collectors and that she was the log-in manager that ran the campaign[1].

4.   Thus Ms. Balaban's affidavit is contradicted by the discovery produced to Plaintiff and the testimony of Brian Bowers, which evince that Ms. Balaban logged in to start the campaign that led to the calls left for Plaintiff. Plaintiff is entitled to take Ms. Balaban's deposition to reconcile the disparities between paragraph 4 of her declaration and the other record evidence in this case.

5.   Moreover, Defendant's operations manual warns against the simultaneous use of both a human dialing campaign and a fully automated dialing campaign. In a human dialing campaign the company's dialer places thousands of automated calls per day, and when a human answers, the dialer switches the call over to a live debt collector

---

[1] As Defendant did in its motion, Plaintiff summarizes a crucial element of testimony which appears at page 18 line 8 through page 19 line 7 of the deposition of Brian Bowers.

in order to engage in conversation regarding the collection of a debt. A fully automated dialing campaign is a procedure in which Defendant's dialer places thousands of calls per day and simply plays a prerecorded message when the alleged debtor answers the telephone or when the alleged debtor's voicemail or answering machine answers the telephone. Defendant's corporate representative, Brian Bowers, testified that he did not know if the dialing campaign that left the two messages that are in question in this case was a fully automated dialing campaign or a human dialing campaign (page 70 lines 16 through 21 of Bowers Deposition). Defendant cannot explain how the messages that Plaintiff received were left, and in fact, Defendant denies that it left the two messages - the July 11, 2011 message which states "connecting -- 1-877-725-4986. Thank you;" and the July 18, 2011 message which states "1-877-725-4986. Thank you." Defendant does admit that the telephone number cited in the message is its phone number, and in fact, that phone number is the phone number assigned to a specific debt collector, Avery Griffin. Because the message that Plaintiff received has Mr. Avery's telephone number in it, it seems reasonable to conclude that the dialing campaign that resulted in the message being left with the Plaintiff was a human dialing campaign. Defendant, however, argues in its motion for protective order at page 3 that the campaign that resulted in the messages being left for Plaintiff was a fully automated campaign - however, its corporate representative, as mentioned above, was unable to testify on this topic. Defendant's argument goes to a crucial issue in this case. Because the company's operations manual warns against the simultaneous use of both a fully automated and a human dialing campaign, but does not say what the consequences thereof may be, Plaintiff should be

4

allowed to take Ms. Balaban's deposition in order to determine exactly which type of campaign was used, if two campaigns were simultaneously used, and if two different types of campaigns were simultaneously used, if that could itself result in the messages left for Plaintiff, because these facts undermine Defendant's bona fide error defense and because Defendant's corporate representative was unable to testify on these issues. Ms. Balaban was the floor supervisor of the call center from which the calls were placed to Plaintiff, and she was Avery Griffin's supervisor, and she specifically initiated the dialing campaign that resulted in the calls being placed to Plaintiff in contradiction to her sworn affidavit attached to the motion, as stated above, thus Plaintiff is entitled to take Ms. Balaban's deposition.

### MR. BABB HAS KNOWLEDGE OF CRUCIAL FACTS RELEVANT TO DEFENDANT'S BONA FIDE ERROR DEFENSE TO WHICH DEFENDANT'S CORPORATE REPRESENTATIVE WAS UNABLE TO TESTIFY

6. Mr. Babb is in charge of auditing all telephone calls that are recorded, and he disciplines debt collectors and other employees who fail to comply with the Fair Debt Collection Practices Act ("FDCPA"). Because the Defendant is asserting the bona fide error defense, and in fact because the bona fide error defense is actually a major issue in this case, Mr. Babb does have detailed and relevant knowledge since the bona fide error defense excuses a debt collector from liability if the debt collector can show a violation of the law occurred notwithstanding the implementation of reasonable procedures designed to prevent the violation, and importantly, if the debt collector can show the violation occurred in good faith. Whether or not Defendant was acting in good faith hinges at least in part upon whether or not Defendant properly trained, supervised, and

disciplined its employees who violated the FDCPA, and Mr. Babb will have knowledge of those facts. Defendant employs over three hundred employees in three different offices in two states and since 2005 has been named as a Defendant in over *one hundred* lawsuits in the federal system for violating the FDCPA and an unknown number in state courts throughout America. Credibility is always an issue, even if Defendant's corporate representative testified on a crucial matter in the case, its other employees who were on the scene may testify differently. Because Defendant has claimed the deposition transcripts are confidential, Plaintiff cannot present it to the Court, but as Defendant did in its motion, Plaintiff will summarize a crucial element of testimony which appears at page 108, lines 3 through 13 of the deposition of Brian Bowers, where Mr. Bowers was asked if he knew if any of the companies employees had knowingly broken the law regarding the FDCPA, but were retained as employees even though they had violated the law. Mr. Bowers responded that he did not know, and that Mr. Babb would know. Mr. Bowers also testified that Mr. Babb is the person at FRS responsible for auditing employee's compliance with the FDCPA. Again, the employees' education and training, including their supervision and discipline for violation of the FDCPA is a crucial element of Defendant's bona fide error defense, which is the basis at least in part, of Defendant's presently pending motion for summary judgment. Thus, if Plaintiff is deprived of obtaining the testimony from Mr. Babb, which the corporate representative was unable to testify on, and which may otherwise contradict the company's position in this case, Plaintiff will be prejudiced.

## TRAINING OF EMPLOYEES IS RELEVANT TO DEFENDANT'S BONA FIDE ERROR DEFENSE, THUS PLAINTIFF IS ENTITLED TO DEPOSE MS. KOSKI

7. Defendant's motion would lead the Court to believe that Ms. Koski is now being forced to attend a deposition in Minnesota when she resides in Wisconsin, while she is pregnant and without an automobile. In reality, the deposition location is a ten-minute drive from Ms. Koski's workplace, and Plaintiff, in consultation with Defendant, specifically arranged this accommodation to *not* inconvenience Ms. Koski. Ms. Koski is in charge of training of Defendant's debt collectors. Defendant's corporate representative, Brian Bowers, was unable to answer a series of questions regarding training, and more recently, on February 1, 2013, Defendant supplemented its discovery responses to disclose Ms. Koski as a person with knowledge of the case (See Exhibit "A"). Because Ms. Koski is the person in charge of training, and because Defendant's corporate representative could not testify as to the training of employees, which is relevant to the reasonableness and the maintenance of Defendant's policies and procedures relative to its bona fide error defense, Plaintiff is entitled to the deposition of Ms. Koski.

8. Plaintiff believes that Defendant's corporate representative, Brian Bowers, who is also the company's president and CEO, is intentionally attempting to evade liability under the FDCPA by engaging in violative debt collection practices in which Defendant places telephone calls to consumers that fail to disclose Defendant's name and fail to disclose that Defendant is a debt collector because it is commonly known in the industry that such vague messages result in a higher response rate from beleaguered consumers because they do not know what the call is about and they thus tend to call

7

back with a higher degree of frequency. Mr. Bowers has expanded his operation enormously from five persons to over three hundred in a period of approximately ten years. Plaintiff believes that Mr. Bowers has intentionally engaged in practices to hide evidence of the firm's liability. At Mr. Bower's deposition (between page 58 line 12 and page 59 line 2), he was questioned about the fact that the company's policy manual specifically states that its debt collector employees were ordered to *not* document that telephone messages that were left with consumers were <u>Foti</u>-compliant, that is, that they disclosed the company name and that it is a debt collector. Mr. Bowers testified that, because it is the company's policy that *all* messages are <u>Foti</u>-compliant, there is no reason to document compliance. The training of Defendant's collectors in the implementation of this policy is inevitably connected to whether Defendant's procedures are reasonable and adapted to prevent FDCPA violations, as it is inescapable that the training of employees is one part of the whole of Defendant's policies and procedures, the reasonableness of which determines Defendant's entitlement to the bona fide error defense. It would seem a logical conclusion that the specific training of employees to *not* document FDCPA compliance evinces unreasonable procedures, and Plaintiff is entitled to depose Ms. Koski on this issue. The information that would be gleaned from Ms. Koski is inevitably tied to this very crucial element of Defendant's bona fide error defense.

      9.      The FDCPA specifically states that its purpose is to prevent debt collectors from gaining an unfair advantage over their competition by engaging in violative collection practices. Plaintiff contends that Mr. Bowers' company has engaged in such violative conduct - as evidenced by the large number of consumer lawsuits that have been

8

filed against the company and the company's exponential growth from five employees to over three hundred in ten years - suggesting that FRS may have obtained competitive advantage over other debt collectors by using telephone messages that fail to disclose its name and that it is a debt collector because such messages result in higher call-backs from unwitting consumers than messages that disclose their true identity and purpose, thereby explaining the company's exponential growth, as it has a segue into dialogue with consumers that can result in financial recovery when the company's competitors who comply with the law, do not enjoy that advantage. Thus, Mr. Bowers has an enormous financial incentive and very personal stake in testifying as to the company's policies and practices that may have influenced his testimony, and his credibility is clearly at stake. This fact combined with the conflicting record evidence (the disparities between Mr. Bowers' deposition and the affidavits submitted in support of Defendant's motion) seems to give rise to the depositions of these three additional witnesses, particularly when the date, time, place, and location thereof were agreed to by the Defendant.

Respectfully submitted,

DONALD A. YARBROUGH, ESQ.
Attorney for Plaintiff
Post Office Box 11842
Fort Lauderdale, Florida 33339
Telephone: (954) 537-2000
Facsimile: (954) 566-2235
don@donyarbrough.com

s/Donald A. Yarbrough
Donald A. Yarbrough, Esq.
Florida Bar No. 0158658

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 12-60945-Civ-Zloch

JOSEPH LYNCH,

    Plaintiff,

v.

FINANCIAL RECOVERY SERVICES OF MINNESOTA, INC,
 d/b/a FINANCIAL RECOVERY SERVICES, INC.,

    Defendant.
_____/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 12, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              s/Donald A. Yarbrough
                                              Donald A. Yarbrough, Esq.

## SERVICE LIST

Ms. Alexandra de Alejo, Esq.
Gray Robinson, P. A.
Suite 2200
201 North Franklin Street
Tampa, FL 33602
Telephone: 813-273-5000
Facsimile: 813-273-5145

Via Notices of Electronic Filing generated by CM/ECF