UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CIVIL CASE NO.: 12-cv-60945-ZLOCH/ROSENBAUM

JOSEPH LYNCH,

                              Plaintiff,

vs.

FINANCIAL RECOVERY SERVICES OF
MINNESOTA, INC., d/b/a FINANCIAL
RECOVERY SERVICES, INC.

                              Defendant.

**FINANCIAL RECOVERY SERVICES OF MINNESOTA, INC.'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff opposes summary judgment by disregarding Defendant's evidence and presenting no evidence that contradicts it. Or, Plaintiff simply disagrees without providing any factual basis, and asks this Court to follow suit. But this Court cannot rely on conjecture and speculation to determine that there is a genuine issue of material fact. Therefore, summary judgment should be granted in favor of Financial Recovery Services of Minnesota, Inc. ("FRS").

## ARGUMENT

**I.   THE TWO RE-RECORDED MESSAGES MUST BE EXCLUDED BECAUSE THEY VIOLATE THE BEST EVIDENCE RULE.**

Plaintiff's case relies exclusively on the recordings and transcript of the two messages at issue. Since FRS filed its original Memorandum of Law, FRS discovered that Plaintiff's counsel deleted the original messages and Plaintiff discarded his telephone that contained the answering machine that recorded the messages because it was not working properly. (Doc. No. 67 at 4-5). FRS has submitted its Motions in Limine to exclude the recordings because the recordings violate the best evidence rule. (*See id.*). Briefly, the original recording is required to prove its contents. Fed. R. Evid. 1002. A duplicate is not admissible when "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. For the reasons stated in FRS's Motion in Limine, the duplicate recording is not

admissible in this case, and the original has been deleted without satisfactory explanation. While a court may consider evidence in an inadmissible form on summary judgment, evidence that does not have an admissible form cannot be considered on summary judgment. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) *aff'd sub nom. McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997). Here, Plaintiff's only evidence of the alleged messages violates the best evidence rule and as a result there is no admissible form of the messages. Therefore, summary judgment should be granted.

II.     **THE TWO MESSAGES AT ISSUE DO NOT VIOLATE THE FDCPA AS A MATTER OF LAW.**

   A.   **The Two Messages Cannot Be Considered "Communications."**

Plaintiff fails to cite a case in which a court concluded that a telephone message consisting of five beeps, the word "connecting," a telephone number, and the words "thank you" constituted a "communication" for purposes of the FDCPA. Plaintiff alleges the messages fail to disclose certain required information. 15 U.S.C. § 1692e(11); *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 646 (S.D.N.Y. 2006). (Compl. ¶ 14). A "communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Here, there is no information regarding a debt directly or indirectly conveyed by beeps, "connecting," a telephone number, and the words "thank you."

Plaintiff misrepresents the holdings of several cases in order to claim that "[m]essages which provide a telephone number to return a call to have been held to be 'communications' under the FDCPA." (Pl.'s Opp. ¶ 3). In the cases cited, the telephone number is not the dispositive issue; rather, a "communication" is shown when the debt collector leaves sufficient information that indirectly refers to the debt in order to entice a return call. *See Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1350 (N.D. Ga. 2008) *aff'd,* 584 F.3d 1350 (11th Cir. 2009) (citing cases referenced by Plaintiff and noting that "the majority of courts that have addressed this issue have held that a phone message referencing an 'important matter' or similar language may be considered a 'communication' under the FDCPA.").

In all the cases cited by Plaintiff, the messages conveyed information that there was something important to discuss and directed the individual to call a specified telephone number. *See Belin v. Litton Loan Servicing, LP*, 8:06CV760 T24EAJ, 2006 WL 1992410, at *1, 4-5 (M.D. Fla. July 14, 2006) (holding that telephone messages on an answering machine that gave the name of the debt collector, a telephone number to call, and directions to have the debtor call

that number, were communications under the FDCPA because they indirectly conveyed information about a debt); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006) ("Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter."); *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005) ("Defendant conveyed information to plaintiff, including the fact that there was an important matter that she should attend to and instructions on how to do so."); *see also Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1339, 1340-41 (S.D. Fla. 2008) (involving a prerecorded message that specifically stated it was an attempt to collect a debt, and discussing the definition of "communication" relating to violations with respect to third parties); *Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, 1292 (E.D. Mo. 2008) (noting the debt collection agency stated to a third party: "Do you have a better number I can reach him at real quick? It's kind of important I get a hold of him" and then left a telephone number for the debtor to call).[1]

The prerecorded messages in the present case conveyed no information to the debtor, directly or indirectly. The message from July 11, 2011 consisted of five beeps, the word "connecting," a string of eleven numbers,[2] and the words "thank you." Similarly, the message from July 18, 2011 consisted of five beeps, the eleven numbers, and the words "thank you." (Statement of Material Facts (Doc. 36) ("Facts") ¶ 11). A string of numbers, without more information, is meaningless to the listener of the message. The messages do not direct the listener to dial the number, nor do they indicate what, if anything, would be the purpose of dialing the number. All the other aspects of the messages—beeps, the word "connecting," and the words "thank you"—do not convey any information at all. None of the elements of the messages at issue provide any enticement to dial the telephone number listed, and as such the messages do not directly or indirectly "convey[] . . . information regarding a debt." 15 U.S.C. § 1692a(2).

Plaintiff appears to argue that a telephone number, without any context or information about what the telephone number is or whether one should call the telephone number, is "information regarding a debt." (Pl.'s Opp. ¶ 3). Under Plaintiff's logic, the mere placement of

---

[1] Plaintiff misleads the Court by claiming that cases cited by FRS involving alleged communications to third parties are irrelevant, while relying on two such cases himself. (*See* Pl.'s Opp. ¶¶ 3-4 (stating cases discussing "communication" with respect to third parties are irrelevant, but citing to *Berg*, 586 F. Supp. 2d at 1339, 1340-41 (S.D. Fla. 2008) and *Thomas*, 579 F. Supp. 2d at 1296-97)).
[2] Plaintiff's transcript formulates the eleven numbers into standard telephone-number format. However, there is nothing in the message itself that conveys this added punctuation.

a telephone call to a debtor's telephone with caller identification functions would constitute a "communication."[3]  But courts have repeatedly held that unanswered telephone calls cannot be considered a "communication."  *See Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 706 (D. Minn. 2012) (collecting cases from various jurisdictions holding that unanswered telephone calls cannot be communications).  In *Wilfong v. Persolve, LLC*, the court determined that no information was conveyed by the unanswered telephone call, in spite of a caller ID feature of the telephone number called.  CIV. 10-3083-CL, 2011 WL 2678925, at *3-4 (D. Or. June 2, 2011) *adopted,* CIV. 10-3083-CL, 2011 WL 2601559 (D. Or. June 30, 2011). The FDCPA definition of "communication" could not be interpreted so broadly to include every act of dialing a telephone when the debtor has caller identification abilities.

In *Garza v. MRS BPO, LLC*, the Southern District of Texas considered a case in which a debt collector left a twenty-second voicemail that consisted solely of dead air.  CIV.A. H-12-1057, 2012 WL 3527072, at *1 (S.D. Tex. Aug. 15, 2012).  After considering some of the same cases cited by Plaintiff, the court concluded that "persuasive case law supports the idea that a voicemail is a communication only when it conveys more information than could be gathered from a missed call."  *Id.* at *3.  The messages in this case contain beeps, the word "connecting," an eleven-digit number, and the words "thank you."  None of this conveys any information to the debtor.  Because the voicemail in this case did not present any additional information that was not available from a missed call, it is not a "communication" for FDCPA purposes.

**B.    The Two Messages Do Not Violate The Meaningful Disclosure Requirement.**

Because the messages in this case were non-substantive, they also cannot result in a violation of the meaningful disclosure requirement.  15 U.S.C. § 1692d(6).  In *Garza*, the court concluded that a blank voicemail message was insufficient to establish liability under 15 U.S.C. § 1692d(6).  2012 WL 3527072, at *2.  The court found no case law addressing non-substantive voicemail messages.  *Id.*  Therefore, the court concluded that the case was more similar to missed call cases than cases in which debt collectors left substantive voicemail messages that implored the listener to return the call.  *Id.* (citing *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d 1104, 1107 (C.D. Cal. 2005); *Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069, 1075 (E.D. Cal. 2005)).  Here, the facts are more similar to *Garza* and missed call cases than cases involving substantive messages that inform the listener of the importance of the message

---

[3] Or, as another example, there could be instances in which a live collector reaches a debtor's voicemail and fails to disconnect in time before the voicemail picks up.  The voicemail service could identify the caller's telephone number, even though the caller refused to leave any message.

and request the listener to return the telephone call. The messages at issue contained no substance, and conveyed no information that would not otherwise be conveyed by a missed call. *See id.* at *3.

The court in *Garza* concluded that imposing liability for the lack of meaningful disclosure in a non-substantive voicemail message would not serve the purposes of the FDCPA. The general purpose of the FDCPA is to eliminate abusive debt collection practices. 15 U.S.C. § 1692(e). The purpose of section 1692d specifically is to prohibit harassment, oppression, or abuse. 15 U.S.C. § 1692d. Imposing liability for non-substantive messages would not serve either of these purposes. *Garza*, 2012 WL 3527072, at *2.

"Courts have determined that under FDCPA Section 1692d(6), meaningful disclosure requires a debt collector to 'disclose enough information so as not to mislead the recipient as to the purpose of the call.'" *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1339 (M.D. Fla. 2011) *aff'd,* 432 F. App'x 918 (11th Cir. 2011) (quoting *Hosseinzadeh*, 387 F. Supp. 2d at 1112). In a case such as this one, in which there are non-substantive messages that do not encourage any action, there is no purpose of the calls that require disclosure to avoid misleading the recipient. There can be no misleading of the recipient regarding the purpose of the messages, because the messages are incomprehensible and contain no substance. This case is analogous to *Garza* because a debtor is not misled by a blank message or a meaningless message that does not convey any information. Therefore, there is no violation of Section 1692d(6).

### III. THE TWO MESSAGES AT ISSUE WERE NOT LEFT BY FRS.

The beeps and the word "connecting" that preceded the telephone number in the messages are not capable of being generated by FRS's automatic dialer, which means the messages were not left by FRS. Plaintiff testified that he did not know who left the beeps and the word "connecting," as Plaintiff recognized in his opposition memorandum. (Pl.'s Opp. ¶ 5 (describing Plaintiff's testimony as Plaintiff "speculated" and "presume[d]" the source of the beeps and the word). Speculation is not evidence. Plaintiff's counsel's records custodian, who is an attorney at the firm and has heard numerous clients' messages, listened to the audio recordings and stated unequivocally that the beeps and the word "connecting" were part of the message and not from a third-party source. (Deposition of Jennifer Colson in her capacity as Records Custodian (Colson Dep.) p. 64 ("[Beep, beep, beep, beep, beep] 'Connecting'. That was part of your client's message.") (brackets in transcript)). FRS has established that these terms were not in the script, and further testimony from CR Software, the manufacturer of the

-5-

predictive dialing system used by FRS, confirmed that the word could not have been generated by FRS's system. (Lusis Dep. 27; Facts ¶ 17; Supplemental Statement of Material Facts ("Supp. Facts") ¶ 17[4]). CR Software cannot conceive of how Plaintiff's purported messages would be generated by FRS's predictive dialing system. (Supp. Facts ¶ 13). Therefore, the messages could not have originated from FRS. Therefore, summary judgment must be granted in FRS's favor.

Moreover, the messages recorded on Plaintiff's answering machine did not originate from an FRS telephone number. According to the records custodian, the two messages were left by telephone numbers (954) 731-6358 and (901) 213-2895. (Supp. Facts ¶ 11). The telephone numbers belong to an AT&T program called Privacy Director that has no affiliation with FRS. (*Id.*; Bowers Aff., ¶¶ 2-3).

## IV.  THE TWO MESSAGES AT ISSUE ARE PROTECTED UNDER THE BONA FIDE ERROR DEFENSE.

Plaintiff's argument against the bona fide error defense is flawed for two reasons. First, Plaintiff incorrectly claims that FRS has no procedures in place to prevent errors. Second, Plaintiff relies on conjecture and speculation to make unsubstantiated arguments that the alleged error in this case is not a bona fide error.

### A.  FRS's Maintains Several Procedures To Avoid Errors.

FRS has established that the error occurred despite the maintenance of procedures to avoid errors and that the procedures were "reasonably adapted to avoid the specific error at issue." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011) (internal quotations omitted). Plaintiff presents no facts, evidence, or law to show why FRS's actual procedures are unreasonable and insufficient to meet the bona fide error standard. FRS utilizes quality control on the front end by checking the message with legal counsel before starting the campaign. (Patin Dep. 25).[5] Then FRS ensures that the campaign is being properly delivered by sending it to an FRS employee's telephone number, as recommended by CR Software. (Patin Dep. 43, Lusis Dep. 150-51).[6] FRS appropriately relies on the system that it has purchased to accurately deliver

---

[4] FRS submits a Supplemental Statement of Material Facts because FRS was required to file its summary judgment documents before the time for discovery had concluded, and the Court granted Plaintiff an extension to file a response in order to allow Plaintiff more time to conduct discovery.
[5] The deposition transcripts of Brian Bowers and Mark Patin have been filed under seal. (Doc. 65).
[6] Plaintiff recognizes that FRS tested the automatic dialer to ensure the proper message was being delivered, but faults FRS for only doing so one time. (Pl.'s Opp. ¶ 8). Plaintiff presents no evidence that testing a machine once to ensure it is performing the job correctly is insufficient. FRS tests the system per recommendations by CR Software

the script that was programmed and tested. The automatic dialer and the computer program used to deliver the prerecorded message are incapable of deviating from the script that is programmed into the computer. (Patin Dep. 45, 52-53; Bowers Dep. 43-46; Lusis Dep. 151-52). The system utilizes result codes to document what action was taken by the automated system. (Bowers Dep. 77-78). Therefore, the system will note whether or not a message was left, if there was a line error, if there was an operator intercept, etc. The computer system reported that there were no errors that occurred when contacting Plaintiff, and that the Interactive Voice Response system executed the correct message. (Bowers Dep. 41-42; Patin Dep. 132, 135). Plaintiff has not—and cannot—produce any evidence contradicting these facts.

Plaintiff's only criticism is that FRS did not record or audit calls leaving a prerecorded message, even though FRS does record and audit calls of human collectors. (Pl.'s Opp. ¶¶ 7-8). But Plaintiff provides no facts or law to establish that listening to recordings of calls of a prerecorded message after-the-fact is the one and only reasonable precaution that must be utilized to prevent errors. *Owen*, 629 F.3d at 1274 (stating case law provides "no definitive list of procedures"). Human collectors' calls are recorded and audited because after-the-fact monitoring is required to ensure that FRS takes appropriate action in response to any human-collector issues. Because the system cannot deviate from the approved script, recording and auditing of prerecorded messages left by the system cannot impact compliance in future cases. (Patin Dep. 52-53; Bowers Dep. 43-46; Lusis Dep. 151-52). In short, FRS has supplied the Court with sufficient evidence that it meets the first prong of the test by using procedures that are designed to prevent errors before they occur.

The existence of a bona fide error defense acknowledges that errors will occur despite efforts of collection agencies to avoid errors. Numerous issues entirely beyond the control of a collection agency may affect telephone calls. (*See* Lusis Dep. 35, 101, 159-60 (noting that issues could arise with telecommunications carriers and other aspects out of FRS's control). But the standard for applying the defense acknowledges that the law requires only *reasonable efforts* to prevent the error alleged, and not every conceivable method to prevent all possible mistakes.[7] *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). FRS crafts the message on the front-end with legal counsel, tests the message to ensure it is delivered properly

---

before starting a message campaign, and the machine is programmed to simply repeat the message campaign by executing each preprogrammed step. (Patin Dep. 43, Lusis Dep. 150-51).
[7] The only way to eliminate all possibilities of an FDCPA violation is for a collection agency to cease all collection activities.

before sending the message, uses computer software and automatic dialers that are incapable of altering the message, and uses computer software that documents the result of the telephone call (including possible line errors or interruptions). FRS reviewed the logs generated by the campaign and found no script alterations or errors in FRS's text-to-speech capabilities. (Facts ¶¶ 16, 18; Patin Dep. 132). FRS utilized numerous procedures—before, during, and after the messenger campaign was operating—to ensure that FRS properly delivered its messages. Plaintiff presents no facts or law to show that FRS used unreasonable precautions.

> B. **Plaintiff's Issues With The Automatic Dialer Are Either Irrelevant To The Alleged Error At Issue In This Case, Lack Substantiation, Or Both.**

The alleged error in this case is that FRS left the end of a prerecorded message without the beginning portion. (Pl.'s Opp. ¶ 15). Plaintiff responds by presenting a long list of hypothetical problems lacking in any substantiation.

Plaintiff extols the benefits of a human collector, noting that a human would be able to hear if the entire message was not left because the message exceeded the capacity of the answering machine or because "lightning struck at the Plaintiff's home and the line went dead." (Pl.'s Opp. ¶ 10). Plaintiff claims that "[t]he procedures employed by Defendant are infinitely less reliable than the use of human collectors" and that "no one on Earth except the Defendant believes" that a computer is incapable of making mistakes. (Pl.'s Opp. ¶ 7, 12). Plaintiff has absolutely no evidence to substantiate that humans somehow err less than the predictive dialer system utilized by FRS, let alone err "infinitely less" than the system. Testimony from those with knowledge of the specific program at issue testified that the program does not make mistakes and executes the script the same way every time. (Lusis Dep. 20-21, 88, 152). Consistency is improved with the system. (Patin Dep. 161-62). And FRS tested the system to ensure that it was delivering the correct message. (Patin Dep. 43). Moreover, FRS utilizes the system's monitoring functions to determine whether the message was delivered and when the prerecorded message was changed. (Facts ¶¶ 16, 18). Human collectors present unique problems, and present a greater possibility of inconsistency than the procedures used by FRS. Following Plaintiff's argument, companies using prerecorded, *Foti*-compliant messages would be categorically denied the ability to invoke the bona fide error defense; however, the statute does not provide for such a categorical denial of the defense and courts have consistently held that the bona fide error defense should be decided on a case-by-case basis. *See, e.g.*, *Owen*, 629 F.3d at 1277.

Plaintiff spends pages explaining how the message could fail if a debtor has an extremely long or extremely short answering machine greeting. (Pl.'s Opp. ¶¶ 9-10). Plaintiff argues that the end of the message could get cut off if the answering machine recording time is short; however, Plaintiff does not allege that an error of this sort occurred, and actually claims the opposite occurred here because only the end of the script is included in the recording, making this unsubstantiated argument irrelevant.[8] (Lynch Dep. 42). Plaintiff argues that the front of the message could get cut off if the answering machine greeting is long and therefore FRS should have used a looping message; however, Plaintiff testified that his greeting was standard and certainly was not overly long. (Lynch Dep. 39 ("Well, the phone would ring a number of rings, then it would say, 'This is Joe, I am not here, please leave a message'; then you would hear a buzz then a message.")). Therefore, Plaintiff's lengthy arguments on these issues are baseless and irrelevant to the error actually alleged in this case.

## CONCLUSION

Based on the aforementioned, Defendant FRS respectfully requests this Court grant its motion for summary judgment.

Respectfully submitted this 12th day of April, 2013.

>/s/ Alissa M. Ellison
>Alexandra de Alejo, Esquire
>Florida Bar No. 43108
>Alexandra.dealejo@gray-robinson.com
>Alissa M. Ellison, Esquire
>Florida Bar No. 15992
>Alissa.Ellison@gray-robinson.com
>GRAY ROBINSON, P.A.
>401 E. Jackson Street
>Suite 2700
>Tampa, Florida  33601-3324
>(813) 273-5000
>(813) 273-5145 (fax)

---

[8] Moreover, Plaintiff provided no evidence as to the length of messages that answering machines or voicemails are capable of recording, nor does Plaintiff provide evidence that FRS's message would fail to fit into such a length. Plaintiff merely speculates that FRS's system will inevitably fail without any facts to support such a bold statement. Plaintiff also does not take into account that the twelve second delay is only a maximum time of delay before the prerecorded message plays, not the delay that occurs upon every call. (Patin Dep. 132). The predictive dialer system will actually wait to detect a period of silence to determine when the answering machine greeting has ceased, and then it plays the recording. (Patin Dep. 170).

        Matthew P. Kostolnik (Pro hac vice)
        MOSS & BARNETT
        A Professional Association
        90 South Seventh Street, Suite 4800
        Minneapolis  MN  55402-4129
        Telephone:  (612) 877-5000
        kostolnikm@moss-barnett.com
        ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed in this matter and provided to all parties via the CM/ECF system, this 12th day of April, 2013.

        /s/ Alissa M. Ellison
        Alissa M. Ellison, Esquire

2319724v3