```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                   CASE NO. 12-60945-CIV-ZLOCH

JOSEPH LYNCH,

        Plaintiff,
                                          O R D E R
vs.

FINANCIAL RECOVERY SERVICES OF
MINNESOTA, INC., d/b/a FINANCIAL
RECOVERY SERVICES, INC.,

        Defendant.
                                     /
```

THIS MATTER is before the Court upon Defendant Financial Recovery Services of Minnesota, Inc., d/b/a Financial Recovery Services, Inc.'s, Motion For Summary Judgment (DE 35). The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

## I. Background

Plaintiff Joseph Lynch initiated the above-styled cause with the filing of a Complaint (DE 1) related to two debt collection phone calls allegedly made by Defendant Financial Recovery Services of Minnesota, Inc. (hereinafter "FRS"). Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (hereinafter "the FDCPA"). Specifically, Plaintiff alleges, in Count I, that FRS violated § 1692e(11) by failing to disclose in the telephone messages that it was a debt collector, and in Count II, that FRS violated § 1692d(6) by placing telephone calls to Plaintiff without making meaningful disclosure of its

identity.

The following facts, unless otherwise noted, are undisputed.[1] On April 14, 2011, Discover Bank placed Plaintiff's account with FRS. FRS contacts consumers with a predictive dialer system which is able to deliver pre-recorded messages to voicemail. Plaintiff claims to have received two such calls, and FRS's records provide additional support that Plaintiff was in fact called by FRS's predictive dialer on July 11, 2011, and again on July 18, 2011.[2] The messages Plaintiff produced as those received from FRS are as follows:

---

[1] The following facts are taken from FRS's Statement Of Material Facts In Support Of Motion For Summary Judgment (DE 36) accompanying FRS's Motion For Summary Judgment (DE 35), Plaintiff's Opposition To Defendant's Statement Of Material Facts In Support Of Motion For Summary Judgment (DE 74), and FRS's Supplement To Statement Of Material Facts In Support Of Motion For Summary Judgment (DE 83).

[2] The Court acknowledges that in both its Motion For Summary Judgement (DE 35) and Reply (DE 82), FRS disputes the fact that it did in fact leave said voicemail messages. In its Reply (DE 82), FRS further argues that both messages should be excluded under the Best Evidence Rule, Fed. R. Evid. 1002. (FRS learned of the deletion of the originals subsequent to filing the instant Motion For Summary Judgment (DE 35).) Neither Party disputes that the recordings Plaintiff would seek to introduce at trial are not the originals. Rule 1003 provides for the admission of duplicates, yet FRS argues that this rule is inapplicable because these duplicated recordings fall under the exception, when "a genuine question is raised about the original's authenticity or circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Rule 1004 provides additional exceptions when other evidence of content is admissible, for example, when "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). The Court will not perform a bad faith analysis at this stage, noting that FRS's Motion In Limine (DE 67) also makes this point, and based on the Court's Order allowing Plaintiff an extension (DE 80), is not fully briefed. For the purposes of summary judgment, the Court views the facts in the light most favorable to the Plaintiff as the non-moving party, as it must, and infers from the unrebutted testimony of Plaintiff combined with FRS's correct accounting of its pre-recorded message at the time and its records noting the calls on the precise dates to Plaintiff, that FRS called Plaintiff on said dates and left original messages resembling the duplicates Plaintiff provides. Therefore, the Court will analyze FRS's other arguments for summary judgement, leaving aside the question of original and duplicate recordings.

```
From the July 11, 2011, transcript:
[Beep, beep, beep, beep, beep] Connecting 1-877-725-4986.
Thank you.

From the July 18, 2011, transcript:
[Beep, beep, beep, beep, beep] 1-877-725-4986.
Thank you.[3]
```

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." The party seeking summary judgment

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quotation omitted). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed

---

[3] FRS notes, and Plaintiff does not dispute, that while the dashes between the numbers have formatted these numbers as phone numbers, no dashes can be heard in the recording. The Court will further note at this point that in its Reply (DE 82) and Supplement To Statement of Material Facts (DE 83), FRS highlights that Jennifer Colson, records custodian of Mr. Yarbrough, Plaintiff's attorney, testified that the calls were received from two numbers which are otherwise not associated with FRS. At least, such numbers appear on the envelope information for the two messages. The Parties continue to dispute this aspect of the calls' origination and have offered no explanation. See DE 83, ¶ 12. However, the Court notes that other undisputed record evidence, with all inferences drawn in favor of Plaintiff, suggests that FRS called Plaintiff. See supra n.2.

a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991); <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Everett v. Napper</u>, 833 F.2d 1507, 1510 (11th Cir. 1987). All justifiable inferences are to be drawn in the light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

### III. <u>Analysis</u>

The FDCPA defines "communication," in pertinent part: "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). This definition affects the application of one of the sections Plaintiff alleges FRS violated:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> > (11) The failure to disclose . . . if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . .

4

15 U.S.C. § 1692e(11). But the other section Plaintiff alleges FRS violated, 15 U.S.C. § 1692d(6), does not require that the violation be strictly limited to the definition of "communication" under § 1692a(2). This section reads, in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> > (6) Except as provided in section 1692b of this title [Acquisition of location information], the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6). Of FRS's two primary arguments in favor of summary judgment, the first, which is that the recordings are not communications under the FDCPA, applies to Count I, for violation of § 1692e(11). The second argument, the bona error defense, is broader and extends to Count II, for violation of § 1692d(6). The FDCPA describes this defense, in pertinent part:

> (c) Intent
>
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

The Court finds that these two voicemail messages <u>do not</u> convey "information <u>regarding a debt</u> directly <u>or</u> indirectly," as required by the FDCPA's definition of communication. 15 U.S.C. § 1692a(2) (emphasis added). The messages which were recorded on

5

Plaintiff's voicemail are distinguishable from the messages in the cases cited by Plaintiff.  In those cases, while the existence of a debt per se may not have been mentioned, some courts found that messages which referenced important matters (left deliberately ambiguous) and which enticed return phone calls were communications under the FDCPA's above-quoted definition.  For example, in the often-cited Foti case, one of the telephone message that the court examined stated that the call was "regarding a personal business matter that require[d] . . . immediate attention."  Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 648 (S.D.N.Y. 2006).  Further, the Foti message twice asked for a call-back and stated that the call "is not a solicitation."  Id.  What the Foti message did not state was that the caller was a debt collector, which is, of course, required by the FDCPA.  Id. at 654-55.  The Foti court analogized its message to a message in another case, which Plaintiff also cites in its response to FRS's instant Motion, Hosseinzadeh v. M.R.S. Assocs., Inc.  Foti, 424 F. Supp. 2d, at 655 (citing 387 F. Supp. 2d 1104, 1115 (C.D. Cal. 2005)(message referenced "some rather important information" and requested a return call)).

The Court acknowledges, along with the court in Thorne v. Accounts Receivable Mgmt., that "[n]either the Eleventh Circuit nor any other has set forth a bright-line rule for what types of communications (in the everyday sense) constitute 'communications' for the purposes of the FDCPA."  No. 11-22290-CIV, 2012 WL 3108662,

6

at * 8 (S.D. Fla. July 24, 2012). The Thorne court further noted that the mere fact that a debt is not referenced on the face of a message, as in the examples cited above from Foti and Hosseinzadeh, does not mean that the message is definitely not conveying information regarding a debt. Id. And, in Thorne, the Court cites further examples, again, some of which Plaintiff wishes this Court to find are similar to the messages in the above-styled cause. See, e.g., id. (citing Belin v. Litton Loan Serv., LP, No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, at *4 (M.D. Fla. 2006) (again, in this case a return call was requested and defendant was also named)).

There being no bright-line rule, and there also being many other federal cases finding that vague messages which entice return phone calls are FDCPA "communications," this Court finds the messages left on Plaintiff's voicemail are of an altogether different character. Here, Plaintiff was not enticed to return the call by any alluring references to important or business matters. The messages Plaintiff received certainly do not convey any information regarding his debt directly, and unlike the other cases cited, these messages do not convey this information indirectly either. In fact, the messages convey almost no information whatsoever. A series of numbers is read. A "thank you" concludes. While the transcripts formulate this number as a phone number, Plaintiff has proved no further reasons why the numbers listed must necessarily be construed as a phone number. Indeed, without

7

further context, the Court could hypothesize a number of different interpretations for these numbers.  Perhaps they are a confirmation number, a serial number, an account number, or a numerical sequence for some other purpose.  While the Court could continue to speculate, it suffices to say that the variety of plausible alternatives corroborates FRS's argument that these two messages were not in fact communications under the FDCPA.[4]  The messages left by FRS provide no context.  Plaintiff might supply the correct context; he might not.  A series of numbers and a closing remark does not constitute a "communication" as defined by § 1692a(2). The Court does not equate these messages with messages which seek call backs and refer to business or important information.

These messages left Plaintiff with little more information than might have been recorded by caller identification.  The Plaintiff realized he had received a call.  He heard a series of numbers the length of a phone number.  In <u>Garza v. M.R.S. Assocs., Inc.</u>, the plaintiff received a message from a debt collection agency that was  twenty seconds of "dead air."  Civil Action No. H-

---

[4] Stanley Fish, professor of humanities and law at Florida International University, discusses how interpretive communities and the contexts they provide affect the interpretation of texts, which can never be interpreted in a vacuum.  Stanley Fish, <u>Is There A Text In This Class?</u> (1980).  Mere words are not always "immediately available," but are "interpretable or readable only by someone who already knows what is included under [a] general rubric" and "who therefore hears the utterance under the aegis of knowledge." <u>Id.</u> at 306-07.  He further notes, "it is impossible even to think of a sentence independently of a context, and when we are asked to consider a sentence for which no context has been specified, we will automatically hear it in the context in which it has been most often encountered." <u>Id.</u> at 310.  Fish's ideas about context are applicable here.  In order for FRS to communicate with Plaintiff, as defined by the FDCPA, this "communication" must provide Plaintiff with at least some context.

12-1057, 2012 WL 3527072, at *1 (S.D. Tex. Aug. 15, 2012).  The Garza court notes, as has this Court, that while § 1692d(6) does not require that the message be a § 1692a(2) "communication," to violate § 1692e(11), the message must be a "communication" under the FDCPA definition.  Id., at *1-2.  With respect to the dead air message, the Garza court concluded, "In short, persuasive case law supports the idea that a voicemail is a communication only when it conveys more information than could be gathered from a missed call."  Id. at *3.

Next, the Court examines FRS's argument that it left the instant messages on Plaintiff's voicemail due to a bona fide error.  This bona fide error defense is applicable to both Counts of Plaintiff's Complaint (DE 1), as noted above.  15 U.S.C. § 1692k(c).  In the Eleventh Circuit, this defense is comprised of three elements.  "A defendant asserting the bona fide error defense must show its violation of the FDCPA: (1) was unintentional; (2) was a 'bona fide' error; and (3) occurred despite the existence of procedures reasonably adapted to avoid violations of the FDCPA."  Salazar v. Fin. Credit Serv., 847 F. Supp. 2d 1329, 1332 (M.D. Fla. 2012) (citing 15 U.S.C. § 1692k(c); Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1353 (11th Cir. 2009)).  FRS has the burden to prove this defense by a preponderance of the evidence.  Id. (citing Niven v. Nat'l Action Fin. Servs., No. 8:07-cv-1326-T-27TBM, 2008 WL 4190961, at *3 (M.D. Fla. Sept. 10, 2008)).  The intent prong, that is step (1), is a subjective

9

inquiry, but the other two prongs involve objective inquiries. <u>Drossin v. Nat'l Action Fin. Servs.</u>, 641 F. Supp. 2d 1314, 1321 (S.D. Fla. 2009) (citations omitted). The <u>Drossin</u> court also noted that, "courts have interpreted this affirmative defense narrowly." <u>Id.</u> (citations omitted). And, "if there is no showing of preventive procedures aimed at avoiding errors and only a claim of mistake, the defense fails." <u>Id.</u> (<u>citing</u> <u>Reichert v. Nat'l Credit Sys.</u>, 531 F.3d 1002, 1006 (9th Cir. 2008)). Yet, "a creditor's procedures need not be foolproof." <u>Rhinehart v. CBE Group, Inc.</u>, 714 F. Supp. 2d 1183, 1185 (M.D. Fla. 2010) (<u>citing</u> <u>Kort v. Diversified Collection Servs., Inc.</u>, 394 F.3d 530, 538-39 (7th Cir. 2005)).

Further, in <u>Owen v. I.C. Sys., Inc.</u>, the Eleventh Circuit adopted the Tenth Circuit's two-step-inquiry version of the third prong, known as the procedures prong. 629 F.3d 1263, 1273-74 (11th Cir. 2011) (<u>citing</u> <u>Johnson v. Riddle</u>, 443 F.3d 723, 729 (10th Cir. 2006)) (further citations omitted). "The first step is 'whether the debt collector 'maintained''—i.e., actually employed or implemented—procedures to avoid errors.'" <u>Id.</u> "The second step is 'whether the procedures were 'reasonably adapted' to avoid the specific error at issue.'" <u>Id.</u> The <u>Owen</u> court observed with other circuits that this was a "fact-intensive inquiry." <u>Owen</u>, 629 F.3d 1263, at 1274 (citations omitted).

Here, the Court begins the analysis of whether any material fact remains in dispute with respect to the three prongs of this

defense by, perhaps, stating the obvious with respect to these two messages: there were two messages, on two different dates, committing essentially the very same error. Because the Court finds that the messages were not "communications," and will grant FRS's instant Motion (DE 35) with respect to Count I, the only error the Court considers at this point, is that allegedly in violation of § 1692d(6), Plaintiff's Count II. Both messages, virtually identical, did not meaningfully disclose the caller's identity. FRS believes that it has successfully alleged the bona fide error defense, but the Court simply notes that a reasonable jury could find that, whether or not this conduct was intentional under the subjective prong (1), FRS did not actually have reasonable procedures in place to avoid this error, and certainly, said procedures were not reasonably adapted to avoid this specific error, particularly since Plaintiff allegedly received two non-compliant messages. Genuine issues of material fact remain with respect to this defense. See, e.g., Jordan v. ER Solutions, Inc., 900 F. Supp. 2d 1323, 1326 (S.D. Fla. 2012) (denying motion for summary judgment as to the bona fide error defense because questions of fact remained as to intent) (further citations omitted). FRS describes the procedures it used in order to setup and check is predictive dialer system. Plaintiff disputes whether those procedures actually contemplated the specific error that apparently still occurred, despite FRS's alleged procedures.

In order to clarify its ruling, the Court observes that in so

ruling that genuine issues of material fact remain with respect to FRS's bona fide error defense, the Court is <u>not</u> weighing in on Plaintiff and FRS's dispute in the briefing about the merits or demerits of a predictive dialer system as compared to a system entirely manned by human beings.  The Court is not required to make such a determination in order to resolve the instant Motion (DE 35).  It would be entirely possible for a defendant to establish a defense of bona fide error under either system.  The Court simply states that with respect to FRS in this particular situation and with this particular error, a reasonable jury could find that FRS's procedures were not reasonably suited to preventing the specific errors that Plaintiff experienced.

The Court finds, after a careful review of the record herein, that there exist material facts in dispute that preclude the entry of summary judgment with respect to Count II.  Whether FRS maintained reasonable procedures to avoid errors and whether these procedures were reasonably designed to prevent the specific errors that occurred are certainly material factual matters that remain unresolved.  Reference by the Court to these examples should not be construed to limit a subsequent trial to these issues alone.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Financial Recovery Services of Minnesota, Inc., d/b/a Financial Recovery Services, Inc.'s, Motion For Summary Judgment (DE 35) be and the same is hereby **GRANTED** in part and

**DENIED** in part as follows:

    a) As to Count I, Defendant FRS's Motion For Summary Judgment (DE 35) is hereby **GRANTED.**

    b) As to Count II, Defendant FRS's Motion For Summary Judgment (DE 35) is hereby **DENIED**; and

    3. Pursuant to Rules 56 and 58, Final Judgment as to Count I shall be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this \_\_\_\_30th\_\_\_\_ day of September, 2013.

                                         */s/ William J. Zloch*
                                         WILLIAM J. ZLOCH
                                         United States District Judge

Copies furnished:

All Counsel of Record